UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| ARNOLD O. FRENCH, III | DOCKET NO. 5:15-CV-00055 |
| v. | JUDGE ELIZABETH E. FOOTE |
| CAESARS ENTERTAINMENT COMPANY, INC., ET AL | MAGISTRATE MARK L. HORNSBY |

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Respectfully submitted:

COOK, YANCEY, KING & GALLOWAY
A Professional Law Corporation

Kenneth Mascagni, Bar No. 14175

333 Texas Street, Suite 1700
P.O. Box 22260
Shreveport, Louisiana 71120-2260
Telephone: (318) 221-6277
Facsimile: (318) 227-7850
E-mail:  ken.mascagni@cookyancey.com

ATTORNEYS FOR CITY OF BOSSIER
CITY, ET AL

## TABLE OF CONTENTS

Table of Authorities ................................................................................................. iii-v

I.      Factual Background ................................................................................1

II.     Summary Judgment Standard ..............................................................6

III.    Substantive Law & Application ...........................................................8

        A.      False Arrest............................................................................8

        B.      Excessive Use of Force .........................................................8

        C.      Qualified Immunity................................................................9

        D.      Probable Cause Undermines False Arrest Claims .............11

                1.      Remaining after Forbidden ......................................11

                2.      Disturbing the Peace................................................13

                3.      Resisting an Officer .................................................14

        E.      Force Responsive to Suspect's Resistance .........................17

        F.      No Custom, Policy or Practice ............................................18

        G.      State Claims Also Fail ........................................................19

        H.      Police Department, XYZ Officers, and Bossier City Municipal Fire and Police
                Civil Service Board as Defendants.....................................20

IV.     Conclusion ..........................................................................................21

Certificate of Service.............................................................................................22

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Anderson v. Creighton*, 483 U.S. 635, 641,
107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987). ............................................................. 10, 11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248,
106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)............................................................................. 6

*Ashcroft v. al–Kidd*, 563 U.S. 721, 131 S.Ct. 2074, 2078,
179 L.Ed.2d 1149 (2011)............................................................................................... 11

*Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir.1994) ...................................................................... 11

*Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884,
60 L.Ed.2d 447 (1979) ................................................................................................. 8

*Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir.2001). ................................................................ 10

*Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir.2008) ............................................................ 1

*Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir.2011) ..................................................... 7

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548,
91 L.Ed.2d 265 (1986) ................................................................................................. 7

*Evans v. Hawley*, 559 So.2d 500, 504 (La. App. 2 Cir.),
writ denied, 563 So.2d 1156 (La. 1990)........................................................................... 20

*Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) ................................................... 17

*Foster v. City of Lake Jackson*, 28 F.3d 425, 429 (5th Cir.1994)................................................. 10

*Fraire v. City of Arlington,*, 957 F.2d 1268, 1278 (5th Cir. 1992) ............................................... 19

*Galvan v. City of San Antonio*, 435 Fed.Appx. 309, 311 (5th Cir.2010) ....................................... 18

*Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir.2001) ........................................................... 8

*Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865,
104 L.Ed.2d 443 (1989)............................................................................................ 8, 17

*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727,
    73 L.Ed.2d 396 (1982) ........................................................................9

*Harris v. Eckerd Corporation*, 796 So.2d 719, 722 (La. App. 2 Cir. 2001) ...............................20
*Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534, 536 (1991) ......................................................10

*James v. Harris*, 577 F.3d 612, 617 (5th Cir. 2009) ..................................................................19

*James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008)............................................19

*Kyle v. City of New Orleans*, 353 So.2d 969, 973 (La. 1977) ...................................................20

*Lawrence v. Univ. of Tex. Med. Branch at Galveston*,
    163 F.3d 309 (5th Cir. 1999) ..............................................................7

*Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) ...............................................7

*Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)...........................11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584-88,
    106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986).............................7

*Monell v. Department of Social Services of New York*, 436 U.S. 658,694,
    98 S.Ct. 2018,2037-38, 56 L. Ed. 611 (1978).................................19

*Pierce v. Smith*, 117 F.3d 866, 871 (5th Cir.1997) ..................................................................11

*Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).............................................19

*Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir.2012)....................................................1

*Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir.1992)................................................................1

*Scott v. Harris*, 550 U.S. 372, 381, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) ...........................8

*Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) ........................................................19

*State v. Barge*, App. 5 Cir.1984, 444 So.2d 735,
    *writ denied* 446 So.2d 1229 ............................................................13

*State v. Bissett*, 451 So.2d 181 (La. App. 1st Cir. 1984) .........................................................13

*State v. Ceaser*, 859 So.2d 639 (La. 10/21/03)........................................................................12

iv

*State v. Kology,* 785 So.2d 1045 (La. App. 3rd Cir. 5/2/01) ...................................................12

*State v. Quest*, 772 So.2d 772
   (La. App. 5th Cir. 10/18/00, writ denied,
   800 So.2d 866, 2000-3137(La. 11/2/01) ...........................................................13

*Stefanoff v. Hays County*, 154 F.3d 523, 525 (5th Cir.1998) .....................................11

*Tennessee v. Garner*, 471 U.S., at 869, 105 S.Ct., at 169961700...................................9

*United States v. Taylor*, 2013 WL 593,5560 (U.S.D.C., W.D. La) ..............................16

*United States v. Watson*, 273 F.3d 599, 602 (5th Cir. 2001)...........................................8

*Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)................................7

## STATUTES

La. R.S. 14:63.3 ...........................................................................................11, 12

La. R.S. 14:103 ................................................................................................13

La. R.S. 14:108 ........................................................................................11, 14, 16

MAY IT PLEASE THE COURT:

On January 9, 2014, Bossier City police officers responded to a call involving a disturbance at the Horseshoe Casino.  Upon arrival, the officers faced a large African-American male who was screaming and hollering in the casino lobby, obviously causing a disturbance for all patrons in the area.  The casino staff informed the officers that the suspect was irate, cursing and threatening the casino staff.  Casino personnel advised that the suspect had been asked to leave the casino.  The suspect had not left the casino.  The suspect refused to comply with officer commands to stop screaming and hollering.  The suspect refused to provide his driver's license. The suspect was arrested, and now contends that he did nothing wrong, should not have been arrested, and further contends that officers used excessive force (slamming him onto the floor, dragging him out of the casino, and throwing him into a police unit).   A video from that night undermines plaintiff's contentions.  The video captures a suspect yelling, screaming, and obviously causing a disturbance.  That video shows a suspect who refused to provide information which would "make his identity known to the [officers]."  The video shows it took three (and then four) officers nearly 30 seconds to place handcuffs on the suspect.  The video shows, not a suspect being dragged out by officers, but a suspect who carried his own weight.  The video shows a suspect who, at his own pace, got into a police unit without any officer hands on the suspect.  For reasons here stated, the defendants are entitled to judgment as a matter of law.

## I.    Factual Background

The factual background, with specific citations to attached proof, is set forth in the Statement of Uncontroverted Facts filed herewith, and is adopted by reference.  In substance, the

1

police officers entered the casino and faced a large black male[1] who was hollering, screaming, and causing a disturbance.  Casino patrons were looking around in surprise because of the suspect's conduct.  Though told repeatedly by multiple officers to stop yelling and to calm down, the suspect continued to rant and rave loudly and offensively.  That conduct corroborated information provided by casino personnel to officers that the suspect had been asked to leave (Ex. B.1, HS Video with Jones audio, 00:59:36-8)[2] (but was still there when police arrived), that the suspect was "irate, cursing and threatening" the Horseshoe employee when walking off  the boat (id. at 1:00:17), was "loud, irate, and belligerent" on the way to the lobby area (id. at 1:04:10-14), and after first telling casino personnel that he would leave the casino, the suspect then changed his mind. (1:05:50 – 55; see also Ex. C, Eviction Report)  When asked by officers for identification, the suspect initially refused to provide even his name, and later only provided a VA card (with name only).  He refused to provide a state-issued identification card or driver's license (which the officers knew he possessed as they saw it when he pulled out his wallet) that would have made his identification known to the officers (through use of a photograph, date of birth, height, weight, etc.).  When officers attempted to arrest the suspect for remaining after forbidden, disturbing the peace and resisting an officer (by failing to provide proper identification), the suspect violently resisted that arrest.  Though the suspect suggests that the officers came up from behind and unexpectedly kicked his legs out from under him[3], a video of this incident demonstrates clearly a different sequence.  One officer passes in front of the suspect

---

[1]  French stands 6 feet and weighed 235 pounds. (Ex. M, French Depo., p.45)
[2]  See also, Ex. N, Terry Hall depo. 10  ("So, they asked him to leave.  And, he said I'm not going anywhere.")
[3]  Ex. M, French Depo., pp. 195-197; p. 188 ("kicked my leg up and pulled it to the left and I went around and fell on my face"); p. 194 ("All of the sudden, his leg went out from under him"); p. 196 ("Someone kicked his leg up.  It went straight up.  Somebody kicked me from the back.")

and approaches the suspect's left arm, and another officer approaches from the front right and takes the suspect's right arm.  Officer Rebecca Sanchez moves from the front of the suspect around his left side towards his back where he can be cuffed.   When the officers attempt to place cuffs on the suspect, the suspect violently twists and turns.  The officers could not maintain their holds on the suspect because of the strength and force used by the suspect as he turned and twisted his arms free.  The suspect jerked back into Officer Sanchez, pinning her against the wall of the casino.  Thereafter, the officers (initially three and then four) take the suspect to the ground and get him cuffed -- something that took approximately 30 seconds to do.  Throughout that time, the suspect resisted violently and relentlessly.  Only after being cuffed did the suspect stop resisting, and only then were the officers able to get the suspect out of the casino.

The suspect makes a claim for excessive force, and asserts mistreatment (1) when taken to the floor, (2) when he was drug out of the casino, and (3) when he was placed in the police unit.  (Ex. M, French Depo., p. 238)  Those contentions, and others, are blatantly contradicted by objective independent proof in the form of video and medical records, to wit:

1. The plaintiff testified that did not yell or scream before being placed on the floor.  (Ex. M, French Depo., pp. 303-304).  Before he was taken to floor during the arrest, all his conversations with the officers "were in a normal tone, normal loudness, conversation type tone." (Ex. M, French Depo., p. 170)[4]

   Directly undermining that sequence are the events and sounds captured by the video.

   French interrupts, yells, screams, and tells the police how they are to do their job. (SOUF, par.11 - 14; 27 – 30; 44, with citation to recording)   He calms down briefly and then bursts back into loud, confrontational demands, which disrupts and alarms all in the area.

---

[4] According to French, he was quiet (Ex. M, French depo. 170, 189, 193), and that is undermined by the recording. French testified he only spoke with the female officer (Ex. M, French depo. 192), also clearly undermined by the video.

(Id.)   That conduct follows (and corroborates complaints about) his prior conduct, as described by casino personnel to Officer Kelly Jones and others. (SOUF, par.3).

2.  French contends he was slammed to the floor when officers came from kicked his feet out from under him (Ex. M, French depo. 194-97), causing him to lose consciousness (id. at 64, 70).

The video shows the interaction between the suspect and officers over a number of minutes, including the five minutes before his arrest.  The first five minutes show officers trying to get a suspect to calm down, to stop yelling, and to stop disrupting everyone near the entrance to the casino.  (Ex. B.2, HS Video with Officer Brice audio, 1:00:50 to 1:06:55, with continuing requests and instruction to quieten down; Ex. G., Affidavit Officer Brice, par. 7-9).  At 1:05:55 to 1:06:03, the officers attempt to cuff the suspect as he is standing by the front counter, without the use of any force beyond movement of officers into position to cuff and efforts to get his hands to a position where they can be cuffed.  (Ex. B.4, HS Video with Officer Sanchez audio, 01:05:50 to 1:06:03; Ex. E, Affidavit of Officer Sanchez, par. 7, 9, 10; Ex. G, Affidavit of Officer Brice, par. 11-12; Ex. D, par. 5-6).  But, the suspect would not allow the officers to cuff him, violently turning and twisting his right arm loose from Officer Brice (Ex.G,, par. 13, video with radical movement at 1:06:04-08), and jerks back into Officer Sanchez, pushing her against the casino wall.  (Ex. E, Officer Sanchez, par. 10;  Ex. D, Sgt. Culver, par. 7; Ex. G, Officer Brice, par. 13)   Only after a level of resistance an officer is slammed into a wall (1:06:08) is the suspect taken to the ground and forcefully cuffed, something that takes 30 seconds and only occurs through efforts of three and then four officers (1:06:08 to 1:06:37).  (B.4, HS Video with Officer Sanchez audio; Ex. E, Officer Sanchez, par. 10-

4

12).   Any suggestion of officers walking up, kicking the feet out from the back, with officers slamming the suspect to the floor is blatantly undermined by the video.  Any idea that the suspect was unconscious upon coming into contact with the ground is undermined by his yelling and grunting when   forcefully resisting all efforts to get his arms behind his back.  (Ex. B.4, HS Video with Officer Sanchez audio, 1:06:08 to 1:06:37)[5]  The recording captures a scenario blatantly undermining French's contentions.

3.   According to French, the officers drug him out of the casino (Ex. M, French Depo. 62, 64,  203)[6], as he allegedly could not get up. (Ex. M, French depo. 203)   French was allegedly unconscious during that time. (Id. at 62, 64)

The video captures the suspect arrying the substance of his own weight from the lobby area out to the police unit.  The video also captures French's comment about walking:  ōI can walk on my own, please let me walk on my own.ö  (1:07:37-9) (Ex. E, Affidavit of Rebecca Sanchez, par. 13) French was certainly conscious. (Ex. B.4, 1:07:15 ó 1:08:15)

Clearly, the officers did not drag him to the police unit.  (Id.)

4.   According to French, the police officers threw him into the backseat of a police unit. (Ex. M, French Depo., pp. 70, 207-210 [with reference to p.203-4, holding on to back of pants and collar of his jacket])

Contrary to those contentions, the suspect expressly asked to get into the vehicle by himself, and the officers allowed him to get in the police unit by himself.  (Ex. E, Aff. Officer Sanchez, par. 13 -14, with cites to video)   The recordings clearly show an

---

[5] The video shows his twisting, flailing, screaming, grunting, and hollering from start to finish.
[6] French testified he did not assist in carrying any of his weight when moved from casino to police unit.  (Ex. M, French depo.64)  In fact, he testified he was unconscious while being drug out to the police unit. (Id. at p.64)  He then changed and suggested he was unconscious only part of that time. (Id. 70)  Regardless of which story is considered, all are undermined by the video.

arrestee moving into the police unit at his own pace and under his own power.  (Ex. B.4, HS Video with Officer Sanchez audio, 1:08:15 to 1:09:15)

5.   The suspect contends that he was injured in various ways.

Medical records from the night of the incident reveal a patient who did not even react to palpation to an area of alleged injury.  (Ex. J, University Health, FRENCH 00021)  The physical exam was õsignificant for no external findings of trauma.ö  (Id.)  That medical further shows an individual who was õambulatory with police without difficulty.ö  (Id. at p.00022)

The recordings undermine Frenchøs contentions and varying scenarios.  At the same time, the video demonstrates that Frenchøs admissions regarding the absence of gratuitous force are correct.  Specifically, no police officer hit him with their fist.  (Ex. M, French depo. 239)  No officer hit or punched him when he was allegedly being drug out.  (Id.)  No police officer took their weight and dropped down on his knee hitting French.  (Id. Depo. 240)  No police officer used a baton. (Id.)  No officer used pepper spray. (Id.)  No officer slapped him at any time.  (Ex. M, French Depo., p. 240)

**II.   <u>Summary Judgment Standards</u>**

Federal Rule of Civil Procedure 56(a) directs that a court õshall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law.ö A fact is õmaterialö if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is õgenuineö if there is sufficient evidence so that a reasonable jury could return a verdict for either party.  *Id.*

The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309 (5th Cir. 1999). The moving party need not produce evidence to negate the elements of the non-moving party's case, but need only point out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325; *Lawrence*, 163 F.3d at 311.

Once the moving party carries its initial burden, the non-moving party must then demonstrate the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584-88, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).  This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). In the absence of any proof, the court should not assume the non-moving party could or would prove the necessary facts. *Id.*

"Although we review evidence in the light most favorable to the nonmoving party, we assign greater weight, *even at the summary judgment stage*, to the facts evident from video recordings taken at the scene." *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir.2011). "A court of appeals need not rely on the plaintiff's description of the facts where the record

discredits that description but should instead consider "the facts in the light depicted by the videotape.öö *Id.* (quoting *Scott v. Harris*, 550 U.S. 372, 381, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)).

### III.   Substantive Law and Application

Plaintiff asserts claims for false arrest and excessive use of force.

A. <u>False Arrest</u>

To prevail on his Section 1983 false arrest claim, plaintiff must prove the officer violated the standard of objective reasonableness under the Fourth Amendment, and that such conduct violated clearly established law, without regard to subjective motivations of the officer. Probable cause exists Awhen the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense. *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir.2001).  The officer is entitled to make an arrest if there was a fair probability that plaintiff had committed or was committing an offense. *Id.*; see also *United States v. Watson*, 273 F.3d 599, 602 (5th Cir. 2001) (probable cause's Afair probability@ requires more than a bare suspicion but less than a preponderance of evidence).

B. Excessive Use of Force

õThe right to make an arrest carries with it the right to use some degree of physical coercion or threat thereof to effect it.ö  *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)  Because õ[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,ö *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979), its application requires careful attention to the facts

and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Id., citing *Tennessee v. Garner*, 471 U.S., at 8ó9, 105 S.Ct., at 1699ó1700 (the question is õwhether the totality of the circumstances justifie[s] a particular sort of ... seizureö).

To establish a Fourth Amendment violation, one that violates clearly established law, the õquestion is whether the officer's actions are ÷objectively reasonableø in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.ö *Graham*, 490 U.S. at 397, 109 S.Ct. 1865.  The officer's use of force must be judged õfrom the perspective of a reasonable officer on the scene,ö not from the view of someone having access to õthe 20/20 vision of hindsight.ö Id. at 396, 109 S.Ct. 1865.  õ]E]vil intentionsö motivating an officer's objectively reasonable use of force õwill not make a Fourth Amendment violation.ö3 Id. at 397, 109 S.Ct. 1865. õThe calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgmentsô in circumstances that are tense, uncertain, and rapidly evolvingô about the amount of force that is necessary in a particular situation.ö  Id. at 396ó97, 109 S.Ct. 1865.

C. <u>Qualified Immunity</u>

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  See *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  Qualified immunity shields officers from suit and liability if a reasonable officer could have believed [the suspect=s

arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed.@ *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987); *Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534, 536 (1991).  Even law enforcement officials who Areasonably but mistakenly conclude that probable cause is present@ are entitled to immunity.  *Anderson,* 107 S.Ct. at 3039-40 (. . . it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials like other officials who act in ways they reasonably believe to be lawful should not be held personally liable).  An officer is protected by qualified immunity unless his conduct is an obvious violation of the law; the unlawfulness must be apparent."  *Anderson*, 107 S.Ct. at 3039.  In opposing the qualified immunity defense, plaintiff has a significant hurdle.  *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir.2001).  [T]here must not even arguably be probable cause for the . . . arrest for immunity to be lost. *Id.*[7]

A right is "clearly established" only when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right in issue, not merely that the conduct was otherwise improper.  See *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Foster v. City of Lake Jackson*, 28 F.3d 425, 429 (5th Cir.1994).  Thus, the right must not only be clearly established in an abstract sense but in a more particularized sense so that it is apparent to the official that his actions [what he is doing] are unlawful in light of pre-existing law.  *Anderson v. Creighton*, 483 U.S. at 640, 107 S.Ct. 3034; *Pierce v. Smith*, 117 F.3d 866, 871 (5th Cir.1997).  If public officials or officers of "reasonable competence could disagree [on whether an action is legal], immunity should be

---

[7] Further, it is not "[required] that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs."  *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir.1992).

recognized." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir.1994). For an official to lose qualified immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Pierce*, 117 F.3d at 882; *Stefanoff v. Hays County*, 154 F.3d 523, 525 (5th Cir.1998).

In substance, violation of "clearly established" law will occur only if "every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al–Kidd*, 563 U.S. 721, 131 S.Ct. 2074, 2078, 179 L.Ed.2d 1149 (2011) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).  Re-stated, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft,* 131 S.Ct. at 2083[8].

### D.  Probable Cause Undermines False Arrest Claims

The suspect was charged with violations of La. R.S. 14:633 (remaining after forbidden), La. R.S. 4:103.3 (disturbing the peace), and La. R.S. 14:108 (resisting an officer).

### 1.  Remaining after Forbidden

La. R.S. 14:63.3 provides in pertinent part:

> "A.  No person shall without authority go into or upon or remain in or upon or attempt to go into or upon or remain in or upon any structure, watercraft, or any other movable, or immovable property, which belongs to another, including public buildings and structures, ferries, and bridges, or any part, portion, or area thereof, after having been forbidden to do so, either orally or in writing, including by means of any sign hereinafter described, by any owner, lessee, or custodian of the property or by any other authorized person.  For the purposes of this Section, the above mentioned sign means a sign or

---

[8]    The qualified immunity doctrine, "even on summary judgment, 'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir.2012) (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir.2008)).

> signs posted on or in the structure, watercraft, or any other movable, or immovable property, including public buildings and structures, ferries and bridges, or part, portion or area thereof, at a place or places where such sign or signs may be reasonably expected to be seen.ö

The elements of the remaining after forbidden violation consist of, not only a request that the defendant leave the premises, but also that the defendant have a reasonable time to actually accomplish his departure. *State v. Kology,* 785 So.2d 1045 (La. App. 3rd Cir. 5/2/01). For example, the remaining after forbidden charge was appropriate where the defendantøs mother wanted the defendant out of her home because he was creating a disturbance and the defendant refused to leave the motherøs home. *State v. Ceaser*, 859 So.2d 639 (La. 10/21/03).

Here, Bossier City police officers were informed that the subject had been informed to depart the premises. (Ex. F, Jones, par. 4, citing recording) He had merely come to the lobby area of the casino. The call for assistance came some time before the initial dispatch at 00:54:14. (See Ex. O, Aff. Chief Bowden, with audio calls) Officer Jones arrived at the casino at 00:59:37, over five minutes after the dispatch (Ex. F, Aff. Jones, par. 3) and necessarily greater than five minutes before the problems with French with calls to the police department. Certainly, the suspect had sufficient time to depart the casino before the officers arrived. (Id.; see also Ex. A, HS Video, showing suspect slowly moving out of casino, ultimately stopping [rather than leaving the casino] in lobby area at 00:52:55) The sequence fully supports the existence of probable cause for remaining after forbidden in violation of La. R.S. 14:63.3.

2.      Disturbing the Peace

La. R.S. 14:103 provides in pertinent part:

> "A.  Disturbing the peace is the doing of any of the following in such manner as would foreseeably disturb or alarm the public:
>
> .   .   .
>
> (2)  Addressing any offensive, derisive, or annoying words to any other person who is lawfully in any street, or other public place; or call him by any offensive or derisive name, or make any noise or exclamation in his presence and hearing with the intent to deride, offend, or annoy him, or to prevent him from pursuing his lawful business, occupation, or duty; or
>
> (3)  Appearing in an intoxicated condition . . ."

Evidence of a suspect screaming and shouting obscenities and offensive words is sufficient to support finding of probable cause for disturbing the peace.  See, *State v. Barge*, App. 5 Cir.1984, 444 So.2d 735, *writ denied* 446 So.2d 1229;  see also  *State v. Bissett,* 451 So.2d 181 (La. App. 1st Cir. 1984) (suspect observed in an emergency room and hallway of a hospital, screaming and cursing in a boisterous and provocative manner at hospital personnel and another person entering the hospital); *State v. Quest*, 772 So.2d 772 (La. App. 5th Cir. 10/18/00, writ denied, 800 So.2d 866, 2000-3137(La. 11/2/01) (suspect involved in a disturbance in which he continually yelled and cursed).

Here, officers observed a suspect who was yelling and screaming in the entrance or pavilion to the casino.  (Ex. E, Officer Sanchez, par.4-7; Ex. F, Jones, par. 4-5)  The officers were informed that the suspect had been asked to leave the casino. (Ex. B.1, HS Video with Jones audio, 00:59:36-8; Ex.F, par.4)   Rather than leave, the suspect was "irate, cursing and threatening" the Horseshoe employees when walking off the boat.  (Ex. F, Jones, par. 4, 1:00:17) The suspect had been "loud, irate, and belligerent" on the way to the lobby area. (Id.; see Ex.

13

B.1, 1:04:10-14)  The complaints by casino personnel were corroborated by the suspect's

conduct in the officer's presence.  French's conduct was "disturbing everyone" in the area.  (Ex.

G, Affidavit of Officer Brice, par.4-7; Ex. O, Audio of three calls to police department, with

third call urging immediate response because of the continuing disturbance)  Casino patrons

looked around in surprise when by reason of defendant's words and how they were said.  (Ex. E,

Aff. Officer Sanchez, par. 5)  The officers could not get the suspect to stop his disruption, even

with multiple requests, commands, and even an arrest.  The officers could reasonably conclude

that such conduct, which had occurred both before and after their arrival, was sufficiently

violent, boisterous, and/or provocative to constitute words which would "foreseeably disturb or

alarm the public."  It was sufficient for casino personnel to want this patron off their property.

Accordingly, a reasonable officer would believe that an arrest was justified.  Alternatively, the

language of the statute did not inform all law enforcement officers that such conduct would not

constitute probable cause.  Accordingly, the officers are entitled to qualified immunity.

   3.   <u>Resisting an Officer</u>

La. R.S. 14:108 provides in pertinent part:

> "A.   Resisting an officer is the intentional interference with,
> opposition or resistance to, or obstruction of an individual acting in
> his official capacity and authorized by law to make a lawful arrest,
> lawful detention, or seizure of property or to serve any lawful
> process or court order when the offender knows or has reason to
> know that the person arresting, detaining, seizing property, or
> serving process is acting in his official capacity.
>
> B.   (1) The phrase "obstruction of" as used herein shall, in addition
> to its common meaning, signification, and connotation mean
> the following:

*   *   *

14

(b)  Any violence toward or any resistance or opposition to the arresting officer after the arrested party is actually placed under arrest and before he is incarcerated in jail.

(c)  Refusal by the arrested or detained party to give his name and make his identity known to the arresting or detaining officer or providing false information regarding the identity of such party to the officer. . . .

Officer Jones asked French for a drivers license on 4 or more occasions. (Ex. F., Jones, par. 6)  Later, Officer Sanchez asked repeatedly for French's identification card.  (Ex. E, Affidavit of Officer Sanchez, par.8; Ex. D, Affidavit of Sgt. Culver, par. 5)  Approximately five minutes after the officers arrived, French provided a VA card, something that only had a name on the card.  (Ex. E, Affidavit of Officer Sanchez, par. 8, Ex. B.4, HS Video with Officer Sanchez audio, 1:05:43)  In responding, French pulled out a wallet with a state-issued identification card and/or license, as that card was seen in his papers by Officer Sanchez.  (Ex. E, Affidavit of Officer Sanchez, par. 8)  French pulled that license away, where it could not be seen, and refused to provide the drivers license or state-issued identification card to the officers. (Id.; Ex. D, Affidavit of Sgt. Culver, par. 5)  That document would have made French's identification known to the officers, as the officers would have had a photograph, date of birth, height, weight and other information to confirm the identity of the suspect.  (Ex. E, Affidavit of Officer Sanchez, par. 8, 16)  At the time the identification card was requested, French had to know or had reason to know that he was being detained by uniformed officers acting in their official capacity.  In fact, when the police walked in, French advised, "I am the one you're looking for." (Ex. M, French Depo., p. 176)  Nonetheless, French refused "to give his name **and** make his identity known to the arresting or detaining officer." (La. R.S. 14:108, subsection c)

15

Similarly, in the *United States v. Taylor*, 2013 WL 593,5560 (U.S.D.C., W.D. La), a law enforcement officer during a traffic stop asked the passenger in the vehicle to produce her identification.  She refused.  The passenger eventually exited the car of her own volition and stood at the rear of the car.  Though the passenger left her identification card on the trunk area of the car, she then removed the identification from the officer who had picked it up.  The suspect was charged with a violation of La. R.S. 14:108 and the magistrate found the defendant guilty of resisting because she refused numerous instructions to produce her identification.  Though the passenger eventually yielded to the officer's authority, her conduct nonetheless violated the provisions of La. R.S. 14:108.

Here, French had an identification card which would allow officers to know his identity, but only provided a VA card only containing a name.  The information provided did not "make his identity known to the arresting . . . officer."  French refused to provide the drivers license he was carrying.  Such conduct would indicate to a reasonable officer that the suspect had violated Louisiana law.  A reasonable officer could reasonably believe that the statute was designed to ensure the sharing of information sufficient to confirm to law enforcement officers the identity of a suspect.  Accordingly, the officers would also be entitled to qualified immunity.

4,      Other Conduct

Officer Jones was informed that the suspect attempted to sell hydrocodone to a Horseshoe employee.  (Ex.F, Jones, par.4)  Terry Hall was employed by the casino, and was approached by the suspect with an offer to sell that drug. (Ex.N, Hall depo.9 ó 10).  Hall reported that event to the casino, after which French was evicted from the casino but refused to leave. (Ex. N, Terry Hall depo. 9-11; Ex.C, Eviction Report).  Officer Sanchez spoke with Terry Hall

that night and confirmed the event.  (Ex. E, par.18)  That sequence would certainly put officers on notice of other criminal conduct.

E.  <u>Force Responsive to Suspect's Resistance</u>

To prevail on an excessive force claim, a plaintiff must show: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive to the need, and (3) the force used was objectively unreasonable. *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). A court should evaluate "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them . . . ." *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In applying this standard, courts are to consider "the fact that police officers are often forced to make split second judgments— in circumstances that are tense, uncertain, and rapidly evolving— about the amount of force that is necessary in a particular situation." Id., at 396-97.  Factors to consider regarding whether the force used was excessive include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, or whether he is actively resisting arrest or attempting to evade arrest by flight." Id., at 396 (emphasis added). The reasonableness of the officers' actions must be judged from the "perspective of a reasonable officer on the scene rather than with the 20/20 vision of hindsight." Id.

Here, the officers initially responded to the disturbance with instructions and then commands for the suspect to stop the loud, obtrusive conduct causing the disturbance.  He was told repeatedly to calm down, to quieten down, and to stop.   He continued to yell and scream. He was instructed repeatedly to provide identifying information.   He was warned that he would

17

be arrested.[9]  When officers approached, they attempted to guide his hands behind his back. Then, when the suspect turned towards Officer Brice and twisted his arm away, the officers continued to try and control his arms.  But, when the suspect jerked back and pinned Officer Sanchez against the wall, the officers had to do more.  That is when the officers took the suspect to the ground so he could be cuffed, a process which took numerous officers 30 seconds to do. The video shows the effort necessary to move the suspect's arms where they could be cuffed.

In substance, the officers used "measured and ascending" actions that corresponded to the suspect's escalating resistance.  They responded with the force necessary to get the task done. Such force is not excessive.  See *Galvan v. City of San Antonio*, 435 Fed.Appx. 309, 311 (5th Cir.2010) (use of force reasonable when it involved "measured and ascending responses" to a plaintiff's noncompliance).   Here, as admitted by the suspect, the officers did not hit him with their fist, hit or punch him when he was allegedly being drug out, taking all of their weight and dropping down on his knee hitting French, use a baton or pepper spray, and did not slap him. (Ex. M, French depo. 239-40)  In short, the officers did not use gratuitous force in getting the arrest completed or in getting the suspect transported to the jail.  That approach does not violate clearly established rights.  In the absence of clearly established law informing all law enforcement officers that such a response was unlawful, the officers would be entitled to qualified immunity.

F.   <u>No Custom, Policy or Practice</u>

To the extent plaintiff pursues federal claims against the City of Bossier or Chief McWilliams in his official capacity, plaintiff must prove the existence of a custom, policy, or

---

[9] The suspect knew he was being arrested or about to be arresting, as he inquired why he was being arrested.  (Ex. B.4, HS Video w/Sanchez audio, 1:05:55).

practice as well as a City's or an official's degree of culpability (deliberate indifference to federally protected rights) and causation (that this City or its official was the moving force behind the violation) in order to impose municipal liability. See *Monell v. Department of Social Services of New York*, 436 U.S. 658,694, 98 S.Ct. 2018,2037-38, 56 L. Ed. 611 (1978); see also *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998). Plaintiff cannot prove a custom, policy, or practice supporting his claims.  (See Ex. I, Aff. of Mayor Lo Walker; Ex. H, Aff. of Armbruster, p.2.)   Moreover, plaintiff cannot meet the burden of proving specific facts, as opposed to conclusory allegations, to meet the elements of recovery.  See *Fraire*, 957 F.2d at 1278.  Accordingly, any municipal liability claim must fail.

Moreover, a §1983 claimant must establish that the defendants were either personally involved in the deprivation of Constitutional or federal statutory rights or that his wrongful actions were causally connected to such deprivation. *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008). "A supervisor is not personally liable for his subordinate's actions in which he had no involvement." *Id.*   Plaintiff can not prove any personal involvement by the Mayor or the Chief of Police.  (Ex. D, Aff. of Sgt. Culver, par. 16)

Additionally, as explained more thoroughly above, plaintiff cannot show that his constitutional rights were violated.  Without evidence of an underlying constitutional violation, any federal claim against the City must fail.  See *James v. Harris*, 577 F.3d 612, 617 (5th Cir. 2009), citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

G.  <u>State Claims Also Fail</u>

Plaintiff cannot establish essential elements of his state law claims for false arrest or excessive force claim.  In Louisiana, a law enforcement officer may arrest a person without a

warrant when the officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer.  La. C.Cr.P. art. 213(A)(1) & (3).  Under Louisiana law, to establish a claim for false arrest, a plaintiff must show a detention that was unlawful.  See *Harris v. Eckerd Corporation*, 796 So.2d 719, 722 (La. App. 2 Cir. 2001).  As set forth above, probable cause existed for multiple offenses.

Moreover, one making a lawful arrest may use reasonable force to affect the arrest and detention, also to overcome any resistance or threatened resistance of the person being arrested or detained. See La. C.Cr.P. art. 220.  Citizens must submit peaceably to a lawful arrest. (Id.)  To determine whether the force exerted was reasonable, the court must look at the known character of the arrestee; the risks and dangers faced by the officer; the nature of the offense or behavior involved; the chance of escape if the particular means are not employed; the existence of alternative methods of arrest or subduing the arrestee; the physical strength, size and weaponry of the officers as compared to that of the arrestee; and the exigencies of the moment.  *Kyle v. City of New Orleans*, 353 So.2d 969, 973 (La. 1977).  Other factors include whether the [arrestee] was belligerent, offensive or uncooperative.  See *Evans v. Hawley*, 559 So.2d 500, 504 (La. App. 2 Cir.), writ denied, 563 So.2d 1156 (La. 1990).  As explained explained above, the use of force against French was reasonable.  The claims should fail.

H. Police Department, XYZ Officers, and Bossier City Municipal Fire and Police Civil
   Service Board as Defendants.

Entities without a juridical existence cannot be a proper party defendant. Here, neither the Police Department nor XYZ Officers is/are not legal entities and should not be subject to suit. Likewise, the Civil Service Board is not subject to suit.   The complaint fails to state a claim against these entities.

**IV.     Conclusion**

Arnold French conducted himself in a way which would foreseeably alarm and disturb the public.  Arnold French failed to provide identification requested repeatedly from the officers. Officers were informed that Arnold French had been instructed to leave the premises and French failed to leave the premises.  The officers had probable cause to make an arrest.  Thereafter, officers used force necessary to overcome the resistance.  The use of measured steps which were responsive to a change of circumstances should not give rise to any claim for excessive force. The officers are entitled, in the alternative, to qualified immunity.  Plaintiff has not asserted claims against the City of Bossier City, the Mayor or the Chief of Police.  Other defendants are not proper legal entities and should be dismissed.

Respectfully submitted,

COOK, YANCEY, KING & GALLOWAY
A Professional Law Corporation


By:___*s/Ken Mascagni*_____
        Kenneth Mascagni  #14175
333 Texas Street, Suite 1700
P. O. Box 22260
Shreveport, LA  71120-2260
Telephone  (318) 221-6277
Telecopier (318) 227-7850

ATTORNEYS FOR CITY OF BOSSIER CITY, ET AL

**CERTIFICATE**

I HEREBY CERTIFY that I have served a copy in paper and electronic form of the above

and foregoing motion on the following parties and their counsel of record by placing a copy of

same in the United States mail, properly addressed and with adequate postage affixed thereon:

Ms. Reshonda Bradford
4615 Monkhouse Dr., Ste. 116
Shreveport, LA 71109

Shreveport, Louisiana, this <u>17</u> day of May, 2016.

*s/Ken Mascagni*
OF COUNSEL

22
